## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **MARIA DE LOS ANGELES MATA,** | ] | |
| **as the Administrator for the Estate of** | ] | |
| **Claudio Mancilla, Deceased** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **4:21-cv-00865-ACA** |
| | ] | |
| **ALLUPICK, INC., et al.,** | ] | |
| | ] | |
| **Defendants.** | ] | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Claudio Mancilla died in a car accident involving a tractor-trailer hauling a load of frozen chicken. His sister, Plaintiff Maria de los Angeles Mata, filed this wrongful death action against six defendants in her capacity as the administrator for Mr. Mancilla's estate. (Doc. 41). Defendant Jear Logistics, LLC, is the freight broker that hired the trucking company whose employee caused the accident. (*Id.* at 2 ¶ 5). Ms. Mata seeks to hold Jear Logistics liable for negligence and wantonness in selecting that trucking company. (*Id.* at 11–12).

Jear Logistics moves for judgment on the pleadings, under Federal Rule of Civil Procedure 12(c), on the ground that the Federal Aviation Administrative Authorization Act of 1994 ("FAAAA"), 49 U.S.C. § 14501(c)(1), preempts the

claims against it.  (Doc. 45 (incorporating doc. 21)).[1]  But although Ms. Mata's negligence and wantonness claims are "related to" a freight broker's "services," such that § 14501(c)(1) preemption applies, these particular claims are exempt from preemption based on the State's "safety regulatory authority . . . with respect to motor vehicles."  49 U.S.C. § 14501(c)(2)(a).  Accordingly, the court **DENIES** Jear Logistics' motion for judgment on the pleadings.

## I.   BACKGROUND

In reviewing a Rule 12(c) motion for judgment on the pleadings, the court "must take the facts alleged in the complaint as true and view them in the light most favorable to the nonmoving party."  *Mergens v. Dreyfoos*, 166 F.3d 1114, 1117 (11th Cir. 1999).  In response to the motion, Ms. Mata has submitted evidence including orders and a judgment from unrelated cases, a transcript of a motion hearing, and a house conference report.  (Doc. 24-1 to 24-5).  Typically the court cannot consider evidence in deciding a motion for judgment on the pleadings.  *See* Fed. R. Civ. P. 12(d).  Thus, to the extent Ms. Mata's submissions are intended as evidence in support of her claims, the court does not consider them.  However, the court may consider judicially noticed facts, such as the content of a house conference report.  *See Horsley v. Rivera*, 292 F.3d 695, 700 (11th Cir. 2002).

---

[1] After an amendment to the complaint mooted Jear's earlier motion for judgment on the pleadings (doc. 43), the parties jointly filed a notice that Jear was renewing its motion and the parties were incorporating by reference the briefs they had filed with respect to that motion (doc. 45).  For ease of reference, the rest of this opinion will cite directly to the earlier motion and briefs.

Jear Logistics is freight broker, hired by a company to arrange the shipment of a load of frozen chicken.  (Doc. 41 at 2 ¶ 5, 5 ¶¶ 17–19).  It selected Defendant Allupick, Inc. to transport the chicken without performing any research to ensure that Allupick "was a safe operator and employed safe drivers."  (*Id.* at 2 ¶ 5, 11 ¶ 41).  And it turns out that Allupick was "an unsafe motor carrier" with "a demonstrated disregard for the safety of the traveling public," and its employee, Defendant Tariku Samson, was "an unsafe driver."  (*Id.* at 11–12 ¶¶ 41–42).  While transporting the chicken in Allupick's truck, Mr. Samson struck Mr. Mancilla's car, causing Mr. Mancilla's death.  (*Id.* at 3–4 ¶¶ 11–12).  Mr. Mancilla's sister, Ms. Angeles Mata, filed this wrongful death suit against various defendants.  (*Id.* at 6–15).  She claims that Jear Logistics' selection of Allupick was negligent and wanton.  (*Id.* at 12 ¶ 43).

## II.   DISCUSSION

Jear Logistics moves for judgment on the pleadings as to the negligence and wantonness claims brought against it for selecting Allupick, arguing that the FAAAA preempts any claim relating to how it performs its function of hiring motor carriers.[2]  (Doc. 21 at 4–15).  Whether the FAAAA preempts negligent selection claims against freight brokers is an open question in the Eleventh Circuit.

---

[2] Count Four expressly asserts that Jear Logistics was both negligent and wanton.  (Doc. 41 at 12 ¶ 43).  Jear Logistics' motion for judgment on the pleadings discusses only the negligence claim.  (*See generally* doc. 21).  Nevertheless, it is clear that Jear Logistics seeks judgment on all claims against it arising from its selection of Allupick.  (*See id.*).  And the same preemption

The Supremacy Clause provides: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land."  U.S. Const. art. VI, cl. 2.  "Consideration of issues arising under the Supremacy Clause starts with the assumption that the historic police powers of the States are not to be superseded by . . . Federal Act unless that is the clear and manifest purpose of Congress.  Accordingly, the purpose of Congress is the ultimate touchstone of pre-emption analysis." *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992) (quotation marks, citations, and alterations omitted).

Congress may preempt state law in several ways, of which only one is relevant here: express preemption.  *See Irving v. Mazda Motor Corp.*, 136 F.3d 764, 767 (11th Cir. 1998).  "[E]xpress preemption clauses must be construed narrowly" when "the subject matter, such as the provision of tort remedies to compensate for personal injuries, is one that has traditionally been regarded as properly within the scope of states' rights."  *Id.* (quotation marks omitted).

The FAAAA was enacted to deregulate the trucking industry.  *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 256 (2013).  The statute's stated policy is "to promote competitive and efficient transportation services in order to" accomplish a number of enumerated goals, including "encourag[ing] fair competition,"

_____

analysis applies to both types of claims.  Accordingly, the court's opinion applies equally to both the negligence and the wantonness claim.  However, for ease of reference, the court will refer only to the "negligent selection claim."

"promot[ing] efficiency," "meet[ing] the needs of shippers, receivers, passengers, and consumers"; "allow[ing] a variety of quality and price options"; "allow[ing] the most productive use of equipment and energy resources"; enabling carriers to earn profits, attach capital, and provide fair wages and working conditions; providing service to small communities and small shippers; providing commuter bus operations; "improv[ing] and maintain[ing] a sound, safe, and competitively privately owned motor carrier system"; promoting participation by minorities; and promoting intermodal transportation. 49 U.S.C. § 13101(a)(2).

The Supreme Court has described Congress's purpose in enacting the FAAAA as "ensur[ing] transportation rates, routes, and services that reflect 'maximum reliance on competitive market forces,' thereby stimulating 'efficiency, innovation, and low prices,' as well as 'variety' and 'quality.'" *Rowe v. New Hampshire Motor Transp. Ass'n*, 552 U.S. 364, 364 (2008) (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378 (1992)). The Supreme Court has also highlighted the economic purpose behind the FAAAA: to avoid "state economic regulation of motor carrier operations" because such regulation "is a huge problem for national and regional carriers attempting to conduct a standard way of doing business." *City of Columbus v. Ours Garage & Wrecker Serv., Inc.*, 536 U.S. 424, 440 (2002).

The FAAAA therefore provides that a State "may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . or any motor private carrier, broker, or freight forwarder with respect to the transportation of property."    49 U.S.C. § 14501(c)(1).    Congress borrowed most of this language from the Airline Deregulation Act of 1978 ("ADA"), 49 U.S.C. § 14501(c)(1), which included a preemption provision prohibiting States from enacting or enforcing any law "relating to rates, routes, or services of any air carrier." *Rowe*, 552 U.S. at 367.  Because of the similarity in language, the Supreme Court has held that cases interpreting the ADA are instructive in interpreting the FAAAA. *Id.* at 370.  But courts must also bear in mind that the FAAAA's inclusion of the final clause "with respect to the transportation of property"—which the ADA does not include—"massively limits" the scope of the FAAAA's preemption compared to the ADA's preemption. *Pelkey*, 569 U.S. at 261 (quotation marks omitted).

The phrase "related to" "express[es] a broad pre-emptive purpose." *Morales*, 504 U.S. at 383 (concerning the ADA's preemption provision).  It includes "state enforcement actions having a connection with, or reference to, . . . rates, routes, or services," even if "a state law's effect on rates, routes, or services is only indirect," and regardless of "whether a state law is consistent or inconsistent with federal regulation," as long as "state laws have a significant impact related to Congress'

deregulatory and pre-emption-related objectives." *Rowe*, 552 U.S. at 370 (quotation marks and emphasis omitted).  However, the FAAAA preempts only state laws concerning "transportation of property," which the FAAA defines in relevant part to "include . . . services related to [the] movement [of passengers or property], including arranging for, receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, storage, handling, packing, unpacking, and interchange of passengers and property." 49 U.S.C. § 13102(23)(B).  The statute does not preempt state laws "affecting . . . prices, routes, and services in only a tenuous, remote, or peripheral manner." *Pelkey*, 569 U.S. at 261 (quotation marks and alteration omitted).

Jear Logistics contends that, as a freight broker, selecting a motor carrier is one of its primary services, so a claim of negligent selection of a motor carrier falls directly under the purview of the FAAAA's preemption provision.  (Doc. 21 at 7– 10).  Ms. Mata responds that (1) the FAAAA does not preempt personal injury tort claims; (2) a claim of negligent selection may impact a broker's method of selecting carriers but it does not require that the broker change its pricing, routes, or services; (3) under a set of factors set out by the Third Circuit, a claim of negligent selection does not have a significant effect on prices, routes, or services.  (Doc. 24 at 6–21).

As an initial matter, the Supreme Court has vigorously rejected the position that the ADA cannot preempt common law tort causes of action. *See Morales*, 504

U.S. at 386; *see also Riegel v. Medtronic, Inc.*, 552 U.S. 213, 316, 323–29 (2008) (finding state common law tort claims for negligence, strict liability, and breach of implied warranty preempted by a federal statute's provision prohibiting a State from enforcing any "requirement . . . which relates to the safety or effectiveness of [medical devices intended for human use]"); *Cipollone*, 505 U.S. at 521–22 (plurality opinion) (explaining that common law damages actions can constitute state regulation because "[t]he obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy") (quotation marks omitted); *id.* at 535 (Blackmun, J., concurring in part, concurring in the judgment in part, and dissenting in part) (agreeing with the plurality that "that phrase 'State law,' in an appropriate case, can encompass the common law as well as positive enactments such as statutes and regulations"); *id.* at 548–49 (Scalia, J, concurring in the judgment in part and dissenting in part) (agreeing with the plurality that "general tort-law duties . . . can, as a general matter, impose requirements or prohibitions . . . and that the phrase 'State law' as used in [the statute at issue] embraces state common law") (quotation marks and alterations omitted).  This reasoning applies equally to the FAAAA's preemption provision.  Nothing about the FAAAA's additional language about "the transportation of property" changes the definition of "law, regulation, or other provision having the force and effect of law." *See* 49 U.S.C. § 14501(c)(1).

Moreover, the only Eleventh Circuit case on which Ms. Mata relies is *Parise v. Delta Airlines, Inc.*, 141 F.3d 1463 (11th Cir. 1998).  (*See* doc. 24 at 9 n.32).  In *Parise*, the Eleventh Circuit held that the ADA did not preempt Florida's age discrimination law because a claim of age discrimination made against an airline does not relate to an airline's prices, routes, or services.  141 F.3d at 1466.  *Parise* does not hold that the ADA never preempts any common law personal injury claims. *Parise* is consistent with the Supreme Court's approach, which requires the court to analyze whether the claim—whether arising from common law or a statute— "relate[s] to a price, route, or service of any . . . broker . . . with respect to the transportation of property."  49 U.S.C. § 14501(c)(1); *see, e.g.*, *Medtronic, Inc.*, 518 U.S. at 492–501 (addressing each of several common law claims asserted in the case to determine whether the federal statute at issue in that case preempted them).

In her complaint, Ms. Mata asserts Jear Logistics negligently selected an unsafe motor carrier to transport goods, leading to the accident that killed Mr. Mancilla.  This claim of negligent selection relates directly to the services a freight broker provides: selecting a motor carrier to transport goods.  *See* 49 U.S.C. § 13102(2) (defining a "broker" as one who "arrang[es] for[ ] transportation by motor carrier for compensation"); *id.* § 13102(23)(B) (defining "transportation of property" to include "arranging for" the movement of property).  Accordingly, this

claim "relates to a . . . service of . . . any . . . broker . . . with respect to the transportation of property." *Id.* § 14501(c)(1).

However, "relating to" a broker's service is not the end of the analysis. Ms. Mata contends that, even if the FAAAA preempts this claim, an exemption applies. The FAAAA expressly carves out from its preemption provision: (1) "the safety regulatory authority of a State with respect to motor vehicles"; (2) "the authority of a State to impose highway route controls or limitations based on the size or weight of the motor vehicle or the hazardous nature of the cargo"; (3) "the authority of a State to regulate motor carriers with regard to minimum amounts of financial responsibility relating to insurance requirements and self-insurance authorization"; (4) "the intrastate transportation of household goods"; and (5) "law[s], regulation[s], or other provision[s] relating to the regulation of tow truck operations performed without the prior consent or authorization of the owner or operator of the motor vehicle." 49 U.S.C. § 14501(c)(2).

Ms. Mata contends that the first of these exemptions—"the safety regulatory authority of a State with respect to motor vehicles"—exempts from FAAAA preemption a state tort for personal injury based on a broker's negligent selection of a motor carrier. (Doc. 24 at 23–27). Jear Logistics contends that this is an overly broad reading of the exemption, which is specific to "motor *vehicles*" and cannot

encompass a claim for negligent selection of a motor *carrier*.  (Doc. 21 at 10–14; doc. 25 at 5–7).

Neither the Supreme Court nor the Eleventh Circuit has addressed the scope of the safety regulatory authority exemption.  The Supreme Court has stated that the statutory language "with respect to the transportation of property" means "concern[ing] a motor carrier's transportation of property."  *Pelkey*, 569 U.S. at 1778–79 (quotation marks omitted).  It follows that "with respect to motor vehicles" means "concerning motor vehicles."  *See also* With Respect To, Webster's Collegiate Thesaurus (1976) ("[A]s for, as regards, as respects, as to, concerning, re, regarding, respecting, touching.").  However, "concerning motor vehicles" does not necessarily mean that the regulation must *directly* address motor vehicles.

The preemption provision itself uses a similar phrase—"related to"—broadly to include even indirect effects on prices, routes, and services.  *See, e.g.*, *Pelkey*, 569 U.S. at 260; *Rowe*, 552 U.S. at 370; *Morales*, 504 U.S. at 383.  It is unclear why the court should read the preemption provision's use of "related to" broadly while reading the exemption narrowly to include only direct effects on motor vehicles.

In a case about the State's ability to delegate its safety regulatory authority to political subdivisions, the Supreme Court stated that "Congress' clear purpose in § 14501(c)(2)(A) [the safety regulatory authority exemption] is to ensure that its preemption of States' *economic* authority over motor carriers of property . . . 'not

restrict' the preexisting and traditional state police power over safety." *Ours Garage & Wrecker Serv., Inc.*, 536 U.S. at 439 (emphasis added). Because of this, a narrow construction of the safety regulatory authority exemption "is surely resistible here, for § 14501(c)(1)'s preemption rule and § 14501(c)(2)(A)'s safety exception to it do not necessarily conflict." *Id.* at 440. In so stating, the Supreme Court "reiterate[d] that § 14501(c)(2)(A) shields from preemption only 'safety regulatory authority' . . . . Local regulation of prices, routes, or services . . . that is not genuinely responsive to safety concerns garners no exemption from § 14501(c)(1)'s preemption rule." *Id.* at 442. *Ours Garage*, however, does not conclusively resolve the question in this case because it did not determine whether the safety regulation at issue was valid, only whether the State had the power to delegate its regulatory authority to a political subdivision. *See id.*

In this case, Ms. Mata's negligent selection claim is that Jear Logistics failed "to ensure that the [motor carrier it selected] was a safe operator and employed safe drivers" and selected "an unsafe trucking company . . . that had a demonstrated disregard for the safety of the traveling public." (Doc. 41 at 11 ¶ 41). Although this claim attacks Jear Logistics' selection of a motor carrier instead of a motor vehicle, the selection of a motor carrier to transport goods necessarily implicates the use of a motor vehicle. And, as discussed above when determining that the preemption provision applies to common law tort claims, Alabama's negligence law, even

though of general applicability, "can be, indeed is designed to be, a potent method of governing conduct and controlling policy." *Cipollone*, 505 U.S. at 521–22 (plurality opinion); *id. id.* at 535 (Blackmun, J., concurring in part, concurring in the judgment in part, and dissenting in part); *id.* at 548–49 (Scalia, J, concurring in the judgment in part and dissenting in part).

Jear Logistics has not presented this court with any reason to believe that Alabama's law on negligent selection "is not genuinely responsive to safety concerns" about the motor carriers who will be driving on Alabama roads. *See Ours Garage & Wrecker Servs.*, 536 U.S. at 442. Jear Logistics' only argument on that point is that the FAAAA expressly mandates motor carriers—but not brokers—to maintain liability insurance to cover personal injury or property damage, showing that Congress did not intend to exempt negligence claims against brokers. (Doc. 25 at 7–8). But Jear Logistics fails to point out where the FAAAA imposes such a requirement on motor carriers. The FAAAA exempts from the preemption provision "the authority of a State to regulate motor carriers with regard to minimum amounts of financial responsibility relating to insurance requirements and self-insurance authorization," 49 U.S.C. § 14501(c)(2)(A), but it does not impose any affirmative requirement that motor carriers maintain a particular type of insurance coverage, nor does it expressly exempt brokers from carrying insurance. Moreover, the district court case on which Jear Logistics relies discussed a Supreme Court case about the

13

ADA's insurance mandate, and expressly distinguished the FAAAA on that ground. (Doc. 25 at 7); *see Krauss v. IRIS USA, Inc.*, 2018 WL 2063829, at *6 (E.D. Pa. May 3, 2018).  The court cannot find that Congress intended to exclude claims against brokers from the safety exemption based on an insurance mandate imposed on airlines in a different statute.

Following the Supreme Court's instruction not to narrowly construe the safety authority regulation exemption, *Ours Garage & Wrecker Servs.*, 536 U.S. at 440, the court concludes that this particular claim that a broker negligently selected an unsafe motor carrier is exempt from preemption under the State's "safety regulatory authority . . . with respect to motor vehicles," 49 U.S.C. § 14501(c)(2).  The court therefore **DENIES** Jear Logistics' motion for judgment on the pleadings.

　　**DONE** and **ORDERED** this May 16, 2022.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE